IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 5:12-cr-42 |
| v. ) | |
| ) | |
| JACIE ELIZABETH KYGER, ) | By: Michael F. Urbanski |
| Defendant-Petitioner ) | Chief United States District Judge |

### MEMORANDUM OPINION

This matter comes before the court on Jacie Elizabeth Kyger's motions for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). In the first motion filed on July 15, 2021, Kyger, represented by counsel, argues that if she were sentenced today, it is unlikely that she would be charged in such a way as to trigger a 20-year mandatory minimum sentence. ECF No. 48. She further argues that if she were sentenced after the Supreme Court decision in Burrage v. United States, 571 U.S. 204 (2014), she could have successfully fought at trial the "death enhancement" placing her at risk of a 20-year mandatory minimum sentence. The government responded to the motion and Kyger filed a reply to the response. ECF Nos. 51, 52. On March 14, 2022, proceeding pro se, Kyger filed a second motion for compassionate release, arguing that she is at risk of infection from the COVID-19 virus. ECF No. 58. Because Kyger has not demonstrated extraordinary and compelling circumstances to justify her release, the court will **DENY** her motions.

### I.

On July 24, 2012, Kyger was charged by information with one count of knowingly and intentionally distributing a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C). ECF No. 2. The same day, she entered into a

plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), in which she pled guilty and agreed to a sentence of 180 months. Plea Agreement, ECF No. 5. Along with the plea agreement, Kyger signed a statement of facts which set out the following:

> On November 5, 2011, the body of Kevin Michael Moyer (Moyer) was found lying on the floor of his parent's home in Timberville Virginia. The investigation into the death of Moyer revealed that he had needle track marks in his arms and hands and that he had toxic levels of Fentanyl, a Schedule II controlled substance, in his blood. A syringe and a spoon containing a liquid containing Fentanyl and a portion of a Fentanyl patch were found in the bathroom with Moyer's body. The Medical Examiner for the Commonwealth of Virginia concluded that Mr. Moyer had died of "acute fentanyl toxicity".
>
> Subsequent to finding Moyer's body on November 5, 2011, law enforcement performed a search of the phone belonging to Moyer and located a large number of text messages that had been exchanged between Moyer and the defendant, Jacie Elizabeth Kyger (Kyger) in the days and hours leading up to his death. These text messages clearly establish an ongoing narcotics relationship that existed between the two and in several of the text messages, both Moyer and Kyger referenced the sale or distribution of fentanyl to Moyer as well as an overdose Moyer had experienced the previous month when Kyger was present.
>
> In addition, Moyer and Kyger exchanged multiple text messages on November 4th, 2011, the day before Moyer's body was discovered, wherein Kyger and Moyer had a discussion about the sale of a fentanyl patch and the type of patches that Kyger had available for sale. In the messages, Moyer indicated that he wanted the type of patch that had gel inside however, Kyger responded that she did not have that type of patch available. Kyger inquired whether Moyer wanted [to] purchase the patch along with two Percocet pills and Moyer indicated that he did. The text messages then show that Moyer scheduled a meeting with Kyger and that he then went to her home, which is located in the western district of Virginia, to purchase narcotics from her. Upon arriving at her residence, Moyer texted Kyger that he had arrived and Kyger then met him in the driveway of her home and sold Moyer two Percocet and a piece of a Fentanyl patch for $60. It was this piece of Fentanyl patch that was then used by Moyer and which caused his death.

Statement of Facts, ECF No. 8.

Kyger faced a maximum statutory sentence of 20 years on the distribution conviction. Pre-Sentence Investigation Report (PSR), ECF No. 27 ¶ 49; 21 U.S.C. §§ 841(a) and 841(b)(1)(C). However, had she been charged with causing death or serious bodily resulting from the

2

distribution, her statutory punishment range would have been 20 years to life. 21 U.S.C. § 841(b)(1)(C).

In determining her sentencing range under the United States Sentencing Guidelines (USSG or "guidelines"), the United States Probation Office assigned a base offense level of 38, which is applicable when an offense of conviction under 21 U.S.C. § 841(b)(1)(C) results in death or serious bodily injury. After receiving a 3-level decrease for acceptance of responsibility, Kyger had a total offense level of 35. She had a criminal history score of II, which, combined with her offense level, resulted in a guidelines sentencing range of 188 to 235 months. PSR, ECF No. 27 ¶¶ 12-21, 24-25, 49. Kyger was sentenced to a term of 180 months in accordance with the plea agreement. J., ECF No. 30. Kyger currently is housed at Aliceville Federal Correctional Institution (FCI) and has a projected release date of September 6, 2025.[1]

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
> ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[1] https://www.bop.gov/inmateloc/ (last viewed August 3, 2022) (search "Jacie Kyger.")

Accordingly, Kyger's requested relief requires the court to consider (1) if she exhausted her administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in her sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.[2]

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129-30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. The government does not contest that Kyger exhausted her administrative remedies when her attorney emailed authorities at Aliceville FCI and asked that they file a motion for compassionate release on her behalf and then filed her motion for compassionate release more than 30 days later. Accordingly, the court finds that Kyger has satisfied the exhaustion requirement.

The court must next consider whether Kyger has shown extraordinary and compelling reasons for a reduction in her term of imprisonment. The United States Sentencing Commission, Guidelines Manual ("USSG") § 1B1.13 application notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's

---

[2] See United States v. Williams, No. 5:01-CR-00012-KDB, 2021 WL 966028, at *1-*2 (W.D.N.C. Mar. 15, 2021).

spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)-(C). Id. at cmt. n. 1(A)-(D).

In United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020), the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so holding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280-84.

### A. COVID-19

Turning first to Kyger's COVID-19 argument, she asserts that due to underlying health conditions of degenerative disc disease in her back and kidney failure, she is at heightened risk of death if she were to become infected with COVID-19. A November 2012 letter from Kyger's attorney summarizing Kyger's medical condition indicated that she had undergone surgery for spinal fusion in 2010 and a diskectomy in 2011 and was noted to have degenerative disk disease and a compression fracture in January 2012. While in jail and without access to narcotic pain medication, Kyger experienced severe, chronic back pain. Letter, ECF No. 27. Kyger did not provide any medical records documenting her allegation of kidney failure, but the court will assume for purposes of this motion that she has received that diagnosis, although the court makes no assumption regarding the severity of the condition.

During the COVID-19 pandemic, this court has found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility

to the disease and a particularized risk of contracting the disease at her prison facility. But the assessment of compassionate release claims based on COVID-19 has changed with the advent of vaccines against the disease. According to the Centers for Disease Control and Prevention, "Vaccines reduce the risk of COVID-19, including the risk of severe illness and death among people who are fully vaccinated."[3]

Kyger does not state whether she has been vaccinated against COVID-19, but the court presumes that she has at least been offered vaccination against the virus.[4] If she has been vaccinated, Kyger no longer has a particularized susceptibility to severe illness from COVID-19. And if she was offered a vaccination and refused it, her claim that she fears dying or becoming seriously ill from COVID-19 is undermined. In addition, according to the BOP, Aliceville FCI currently has six inmates and zero staff persons who have tested positive for COVID-19, indicating that steps taken at the unit to prevent transmission of the virus are effective.[5] Thus, the court finds that Kyger does not have a particularized risk for contracting COVID-19 and the court will **DENY** her motion for compassionate release based on COVID-19.

### B. Death or Serious Bodily Injury Enhancement

Kyger also asserts that she was "threatened" with a 20-year mandatory minimum sentence unless she pled guilty and accepted a 15-year sentence. See 21 U.S.C. § 841(b)(1)(C) (setting out penalties and providing that "such person shall be sentenced to a term of imprisonment of not

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (updated June 28, 2022) (last viewed August 4, 2022).
[4] "The Bureau of Prisons (BOP) is working with the Centers for Disease Control and Prevention (CDC) and the Federal Government's COVID-19 Vaccine/Therapeutics Operation ... to ensure the BOP administers the COVID-19 vaccine in accordance with available guidance." https://www.bop.gov/coronavirus/ (last viewed August 4, 2022).
[5] Id. ("The BOP's COVID planning is structured using the Incident Command System framework and guidance and directives from the Centers for Disease Control, DOJ and federal partners, as well as the agency's Pandemic Influenza Plan.")

6

more than 20 years, and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than 20 years or more than life ....") While nothing in the record indicates that Kyger was "threatened," the parties understood that given the circumstances surrounding Moyer's death, the government could have charged her with causing death or serious bodily injury and this understanding undoubtedly influenced the plea negotiations. See Def.'s Sentencing Mem., ECF No. 26 at 6-7 ("Had the government charged that the distribution resulted in death from the use of the substance, she would have been subject to a minimum sentence of 20 years and a maximum of life."); see also Statement of Reasons, ECF No. 31 at 2. Kyger argues that if she were before the court today, "it is unlikely that [she] would be charged in such a way today that triggered a 20-year-mandatory minimum, and she may not have been charged that way in the first place if she was lucky enough to be charged in a different district in 2012." Mot., ECF No. 48 at 4.

The court notes that Kyger waived indictment and was never charged with causing Moyer's death under the statute. However, her base offense level was predicated on USSG § 2D1.1, i.e., having caused death or serious bodily injury, rather than on drug weight. PSR, ECF No. 50 ¶ 12. Kyger cites statistics showing that from fiscal year 2012 through fiscal year 2020, more defendants had sentences calculated under USSG § 2D1.1 in the Western District of Virginia than in any other district. She argues that it is a "telling story of prosecutorial discretion" and shows how different federal district courts approach the same heroin crisis. She also argues that "sentences for similar offenses have dropped dramatically within the Western District of Virginia in the last ten years." Mot., ECF No. 48 at 6.

7

Assuming all of those assertions are true, they do not warrant a finding that Kyger is entitled to compassionate release. Nothing in the facts surrounding Kyger's actions or in the prosecution of her case has changed. She has never disputed that she sold fentanyl to Moyer and that he injected it and overdosed. If the case were being prosecuted today, the government would still have the option of charging her with "death or bodily injury" under the statute and she still would be subject to a base offense level of 38 under USSG § 2D1.1. She would face the same penalties today as she did in 2012 and would have the same choice to make. Her argument that today the government would offer her a sentence of less than 15 years is speculative and provides no basis for compassionate release.

Kyger also argues that although she cooperated with the government, she was not offered a sentence reduction under USSG § 5K1.1. Kyger cites to cases in this district where motions under USSG § 5K1.1 were made and granted, with the result that the defendants' sentences were lower than that of Kyger.

It is well-established that USSG § 5K1.1 gives the government discretion in deciding to bring a motion for substantial assistance: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Similarly, Fed. R. Crim. P. 35(b)(1) provides that "[u]pon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." The government also may move for a sentence reduction more than one year after sentencing under certain circumstances. Fed. R. Crim. P. 35(b)(2). "As these rules make clear, whether a defendant has provided

8

substantial assistance to warrant a reduction in either his sentencing guidelines or sentence is left to the discretion of the Government." United States v. Fuller, No. 3:16CR40-HEH, 2018 WL 4088044, at *3 (E.D. Va. Aug. 27, 2018) (citing Wade v. United States, 504 U.S. 181, 186-87 (1992)). "[A] sentencing Court cannot sua sponte consider a defendant's assistance under USSG Section 5K without a motion from the Government." Id. (citing United States v. Francois, 889 F.2d 1341, 1343 (4th Cir. 1989)).

Kyger argues that because other defendants received shorter sentences than she did when the government made and the court granted a substantial assistance motion under USSG § 5K1.1, she is entitled to compassionate release. But she points to no authority and the court knows of none where compassionate release has been granted to a defendant under similar circumstances. The fact that the government moves for sentence reductions under USSG § 5K1.1 in some cases but not in others does not lead to the conclusion that there is a disparity between the sentence Kyger received in 2012 and the sentence she would receive today. Accordingly, Kyger is not entitled to compassionate release due to the fact that the government did not move to reduce her sentence based on substantial assistance.

Kyger next argues that if Burrage had been decided at the time she was prosecuted, she would not have pled guilty but would have gone to trial because there was no evidence in her case from which a jury could have concluded that the fentanyl patch she gave Moyer was the "but for" cause of his death. In the Burrage case, Joshua Banka died after overdosing on drugs, including heroin he bought from defendant Burrage. The evidence showed that Banka started a drug binge by smoking marijuana and later in the day crushed, cooked, and injected oxycodone. That evening, he bought one gram of heroin from Burrage and immediately

9

cooked and injected it. Later that evening he injected more heroin. The next morning, he was found dead in his home. A search of his house and car turned up syringes, 0.59 grams of heroin, alprazolam and clonazepam tablets, oxycodone pills, a bottle of hydrocodone, and other drugs. Burrage, 571 U.S. at 206.

Burrage pleaded not guilty to distributing heroin and to the charge that he had unlawfully distributed heroin and that "death . . . resulted from the use of th[at] substance," under § 841(b)(1)(C). At trial, a medical expert testified that multiple drugs were present in Banka's system at the time of his death, including heroin metabolites, codeine, alprazolam, clonazepam metabolites, and oxycodone. Id. at 207. Although morphine, a heroin metabolite, was the only drug present above the therapeutic range, the doctor could not say whether Banka would have lived had he not used the heroin. He did conclude, however, that heroin was a contributing factor in Banka's death because it interacted with the other drugs to cause respiratory or central nervous system depression. Id. The state medical examiner reached a similar conclusion, describing the cause of death as "mixed drug intoxication" with heroin, oxycodone, alprazolam, and clonazepam all contributing to Banka's death. The medical examiner could not say whether Banka would have lived had he not taken the heroin but testified that his death would have been "very less likely." Id.

Burrage was convicted and the Eighth Circuit Court of Appeals affirmed. The Supreme Court granted certiorari on two questions: whether a defendant may be convicted under the "death results" provision of § 841(b)(1)(C) when (1) the use of the substance is a "contributing cause" of the death and (2) without instructing the jury that it must decide whether the victim's

10

death by overdose was a foreseeable result of the defendant's drug-trafficking offense. Id. at 208. The Court vacated the guilty verdict and remanded the case, holding that

> at least where the use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.

Id. at 218-19.

The holding in Burrage does not lead to the conclusion that if Kyger were prosecuted today, she would be acquitted or face a shorter sentence, thus creating a sentencing disparity that could be remedied by a grant of compassionate release. As noted in Kyger's sentencing memorandum, her attorney advised her to enter into the plea agreement because her case "did not appear to be defensible" as the medical examiner had concluded that fentanyl was the only substance in Moyer's system and was clearly the cause of death. Sentencing Mem., ECF No. 26 at 6. Also, as set forth above, Kyger agreed that she sold a partial fentanyl patch to Moyer and that he extracted the fentanyl from the patch, prepared it in liquid, and injected it with a syringe. Statement of Facts. ECF No. 8. Given these facts, even if Kyger were prosecuted after Burrage, the government had evidence that the fentanyl Kyger sold Moyer was the "but for" cause of his death. Therefore, Burrage did not create a sentencing disparity that would entitle Kyger to compassionate release.

This case was a tragedy for all involved. Kyger was an addict who sold drugs to support her habit, and Moyer overdosed on the fentanyl she sold him. To Kyger's credit, she has taken steps to better herself and she has maintained supportive relationships with family members while incarcerated. It is hoped that the positive strides she has made indicate that she will lead a productive, law-abiding life once she is released from incarceration. Nevertheless, the fact

remains that Kyger, with the advice of counsel, entered into a plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure in exchange for a 15-year sentence and therefore avoided a potential 20-year sentence. Nothing in the compassionate release statute offers Kyger relief from the sentence and the court must **DENY** her motion.[6]

### III.

For the reasons stated herein, the court **DENIES** Kyger's motions for compassionate release, ECF Nos. 48, 58. The Clerk is directed to send a copy of this opinion to the petitioner.

An appropriate order will be entered.

It is so **ORDERED.**

Entered: September 3, 2022

Michael F. Urbanski
Chief United States District Judge

---

[6] Because Kyger has not demonstrated any "extraordinary and compelling reasons" for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), the court will not address the § 3553(a) factors.